Date signed July 05, 2006



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| PERRYVILLE INVESTMENT GROUP, LLC | * | Case No. | 05-27274DK |
| | * | Chapter | 7 |
| | * | | |
| | * | | |
| Debtor | * | | |

### MEMORANDUM OF DECISION UPON AMENDED APPLICATION FOR COMPENSATION FOR SERVICES AND REIMBURSEMENT OF EXPENSES FOR EXAMINER SEAN C. LOGAN

On September 23, 2005, Sean C. Logan, Examiner, filed "Executor's [sic] First and Final Application for Compensation. The Application was thereafter amended on October 5, 2005 by the filing of the Amended Application. On October 25, 2005, an Opposition to Executor's Amended First and Final Application for Compensation and Request for Hearing was filed by Stephen M. Wright ("Mr. Wright," assertedly a creditor), Krista D. Wright (assertedly a creditor), Trust F/B/O Secured Creditors of Perryville Investment Group, LLC (with Mr. Wright as Trustee), Leslie and Margaret Goodwin (assertedly secured creditors), and the Debtor, Perryville Investment Group LLC. The court conducted an evidentiary hearing upon the Amended Application and Opposition on December 14, 2005, and at the conclusion of the hearing took the matter under advisement.

This Debtor has a lengthy and somewhat contentious history in the Bankruptcy Court. The instant case was preceded by three prior failed Chapter 11 cases of the same Debtor.

The first such case, Case No. 01-59530, was filed as a voluntary Chapter 11 on June 15, 2001. On June 24, 2003, the court (Derby, J.) conducted a hearing upon a Motion to Dismiss filed by the United States Trustee and a Motion to Convert To Chapter 7 filed by a creditor, along with the objections to those motions filed by Mr. Wright and the Debtor. Mr. Wright was the principal officer of the Debtor, but filed his objection to the United States Trustee's motion as a creditor. For the reasons enunciated by Judge Derby on the record, the court granted the motion by the United States Trustee and the case was dismissed. Among the other findings, Judge Derby found that the economic issues which caused the Debtor to file the case were principally a two-party dispute between the Debtor and the Debtor's landlord. Judge Derby further found that information concerning the finances of the Debtor had to be "reluctantly dragged out of the Debtor" and that it was demonstrated that a successful confirmation was not to occur. An Order granting the Motion to Dismiss was entered on July 8, 2003.

However, the case did not end at that point. A Motion to Reconsider the Order of Dismissal was filed by the Debtor through new counsel, Douglas H. Seitz, Esquire, as well as an emergency request to stay the dismissal order pending determination of the Motion To Reconsider. In addition, Mr. Wright, as a creditor, filed his own Motion to Alter or Amend or Vacate the Order of Dismissal. A response filed by Chandrakant Patel, landlord of the Debtor, opposed Mr. Wright's Motion to Vacate. On August 28, 2003, the court denied the motions seeking reconsideration. Shortly thereafter, the court granted an "Emergency Motion" to withdraw as counsel filed by attorney Seitz.

Thereafter, on September 4, 2003, the court conducted a hearing upon the Final Application for Compensation by attorney Ronald J. Drescher, who had served as initial counsel for the Debtor. On October 21, 2003, the court entered a Memorandum of Decision and an Order Granting the

Application for Compensation. Mr. Wright filed, individually and as President of Debtor,[1] a Motion to Alter or Amend the Order Granting the Application for Compensation. The court denied that Motion by Order entered on February 18, 2004.

On February 23, 2004, a Debtor, by Mr. Wright as "Managing Member," filed a Notice of Appeal and later that day filed an Amended Notice of Appeal adding by interlineation himself in his capacity as a creditor as the co-appellant. On June 24, 2004, a final Order was entered by the United States District Court for the District of Maryland (Blake, J.), dismissing the appeal. Debtor, by Harold J. Tulley, Esquire, then filed a Motion for Reconsideration. The motion was denied by Order entered August 11, 2004.

Debtor then filed a Notice of Appeal to the United State Court of Appeals for the Fourth Circuit. On February 3, 2005, a judgment was entered by the Court of Appeals affirming the Order of the District Court dismissing the appeal from the Bankruptcy Court. A subsequent petition for re-hearing was denied and on April 21, 2005, a mandate was issued by the Court of Appeals to the District Court.

Meanwhile, on March 1, 2005, the second case was commenced as an involuntary chapter 7 case by petitioning creditors Mr. Wright and Krista Wright. An emergency motion to have an interim trustee appointed was filed by Mr. Drescher and subsequently denied by the court for failure to demonstrate grounds for relief. Shortly thereafter, on March 31, 2006, despite a request by petitioning creditors for an extension of time to complete service, the court dismissed the involuntary petition due to the failure of petitioning creditors to effectuate service.

Again, on April 6, 2005, Mr. Wright and Krista Wright, as petitioning creditors, filed an involuntary chapter 7 case against Debtors. Service was incomplete once again. Mr. Drescher

---

[1] The appearance of Perryville Investment Group, LLC, Debtor, in the aforesaid motion without counsel was in violation of the requirements of Local Bankruptcy Rule 9010-1(a).

3

again filed an emergency motion to appoint interim trustee which was heard by the court on May 16, 2005.  The court dismissed the case with prejudice on May 17, 2005, and further ordered that Mr. Wright and Krista Wright were forbidden from filing an involuntary petition against Debtor for two years and ordering that if such filing were made that the automatic stay would not apply.

The instant case was commenced on August 2, 2005, by the filing of a voluntary Chapter 11 petition for Perryville Investment Group, LLC signed by Harold J. Tulley, Esquire, as attorney for the Debtor, and by Mr. Wright as both Managing Member of the Debtor and as "non-attorney petition preparer."  The next day Mr. Drescher, now a judgment creditor of the Debtor, filed an emergency motion to dismiss or convert the case to a case under Chapter 7, or to appoint a Chapter 11 Trustee.  Oppositions to Mr. Drescher's motion were filed by the Debtor by attorney Tulley, and by Mr. Wright and Krista Wright, as "creditors, holding secured and unsecured claims in this bankruptcy case. . . ."  The Wright's Opposition to Drescher's Motion recited that a sheriff sale had been scheduled for August 12, 2005, upon a Writ of Execution for collection of a judgment obtained by attorney Drescher against the Debtor.  That Opposition further recited that financing statements were recorded at the Maryland State Department of Assessments and Taxation after dismissal of the prior case and in favor of Mr. Wright, Krista Wright and others.

The court commenced a hearing on Mr. Drescher's Motion on August 11, 2005, and for the reasons set forth on the record at the conclusion of that hearing, entered an Order Appointing Chapter 11 Examiner and Setting Final Hearing upon the Motion to Dismiss for September 1, 2005.  Pursuant to the court's Order of August 11, 2005, the United State's Trustee's Office selected Sean C. Logan as Examiner and an Order entered on August 12, 2005, approved that appointment.  The Examiner filed his report on August 30, 2005, as required by the Order of Appointment.

The hearing upon Mr. Drescher's pending Motion re-commenced on September 1, 2005,

4

and was continued to September 7, 2005.[2]  For the reasons set forth on the record on September 7, 2005, this court entered the Order Requiring Appointment of Chapter 11 Trustee.  The United States Trustee selected Michael G. Rinn and the application for order approving appointment of Trustee was approved and entered on September 12, 2005.

On October 27, 2005, a Motion For Removal of the Chapter 11 Trustee was filed by the Debtor, Mr. Wright and Krista Wright, as well as creditors Leslie Goodwin and Margaret N. Goodwin.[3]  The next day Trustee Rinn filed a Motion to Convert, seeking to have the case converted from Chapter 11 to Chapter 7.  Also, on November 8, 2005, Trustee Rinn filed a Motion to Sell the business known as Giant Discount Liquors which was the principal business of the Debtor.  Consideration of the Motion to Sell was stayed pending resolution of the Motion to Convert.

The court held a hearing on the Motion to Convert on December 6, 2005, and granted the requested relief.  The Order converting the case to a case under Chapter 7 was entered that same day.  Thereafter, an Order was entered on December 14, 2005, denying the relief sought in the Motion for Removal as moot as the case had been converted to a case under Chapter 7.  Further, the court denied additional prayers for relief contained in the Motion for Removal, including that the matter somehow be referred for review by the United States Attorney General's Office.

In accordance with Section 701(a) of the Bankruptcy Code, the Office of the United States Trustee appointed an interim trustee in the Chapter 7 case.  Bud Stephen Tayman was appointed as the Chapter 7 Trustee.  Trustee Tayman filed an Application to employ his law firm, Bud Stephen

---

[2] Various pleadings by way of supplemental opposition and answers were filed.

[3] Leslie and Margaret Goodwin are the holders of additional financing statements allegedly filed with the Maryland State Department of Assessments and Taxation after the conclusion of an earlier bankruptcy case and prior to the commencement of this case.

5

Tayman, P.A., as counsel to the Trustee. Mr. Wright as an individual creditor and as Trustee for the Trust FBO Secured Creditors, immediately filed an opposition to the Application. After a hearing, on March 18, 2006, an Order was entered granting the Application.

On April 18, 2006, Trustee Tayman filed an Application to employ the firm of Shulman, Rodgers, Gandal, Pordy & Ecker, P.A., as special counsel to the Trustee, which Application was also opposed by Stephen M. Wright, individually and on behalf of other alleged creditors. Mr. Wright's opposition further requested the removal of Trustee Tayman.

In this posture, a Motion to Dismiss Case has been filed by the United States Trustee, much like the Motion to Dismiss Debtor's first bankruptcy case. The Motion to Dismiss is pending and set for hearing on July 18, 2006. In partial opposition to the Motion to Dismiss, the Examiner has filed a request that Examiner's Application for Compensation be ruled upon. The court now turns to that application in view of the history enunciated hereinabove.

The Amended Application by the Examiner requests approval of fees in the amount of $18,000.00 and reimbursement of expenses in the amount of $165.40. The Amended Application is accompanied by an exhibit recording the daily time records of those persons within the office of the Examiner who worked upon the matter in the customary "time sheet" format. The Amended Application itself contains nine pages of enumerated paragraphs describing in summary the activities of the examiner, the "lodestar" basis for the Examiner's compensation request, and the customary factors to be considered for approval of professional fee applications.

The Opposition to the Amended Application contains 21 enumerated paragraphs setting forth the opponents' objections to Examiner's requested fees (and a 22nd enumerated paragraph reciting opponents' request that fees be denied). At the hearing upon the Amended Application, Mr. Wright was the principal speaker for opponents and attorney Tulley, counsel to Debtor,

6

deferred to Mr. Wright.[4]

In their Opposition the opponents complain that the Examiner did not provide a copy of his fee agreement and exhibit to all creditors and thus they were "not properly served." They also complain the motion (application) was not supported by an affidavit and therefore not by any "competent evidence." They further complain that Exhibit A (the time sheet exhibit) was not attached. None of these statements are correct. Notice of the Amended Application, filed therewith, contains a certificate of service upon all creditors and parties-in-interest in the case as required by Federal Rule of Bankruptcy Procedure 2002. The exhibit is attached to the Amended Application as filed with the court. The evidence is the testimony at the December 14, 2005 hearing upon the Amended Application and exhibits entered into evidence at that hearing.

The opponents also assert that the Examiner was not properly appointed, the scope of work was not properly approved by the court or agreed to by creditors and the Debtor, and that the appointment of an examiner was based upon unsound and unsubstantiated allegations. These alleged grounds for objection are also without merit. The appointment of the Examiner cannot be collaterally attacked by the opposition to the request for compensation. The Order Appointing Examiner set forth with specificity the requirements imposed upon the Examiner and the additional powers granted to the Examiner to carry out such requirements.

The opposition also avers that the fees are unreasonable, unconscionable and exaggerated and not approved by the court, creditors or by the Debtor. The issue of the reasonableness of fees will be addressed hereinafter. The approval by the court is by the Order accompanying this Memorandum. No approval is required by the creditors or the Debtor, although each has had an

---

[4] In virtually all hearings upon matters before this court in the instant case, Mr. Wright has been the principal spokesperson in favor of the position to taken jointly by Mr. Wright and other individuals, as well as the Debtor.

7

opportunity to object and to be heard.

Finally, the remaining thrusts of the Opposition are that the Examiner is illegally attempting to charge for work done by other professionals in his office, expanded the scope of the work without court approval, did not do the work efficiently and completely (including failing to request and examine all necessary documents), and that the Examiner's report was inaccurate. As to the first of these objections, Section 330 of the Bankruptcy Code governing the compensation of professionals (including specifically an examiner), provides for reasonable compensation for actual necessary services rendered by such persons including any para-professional person employed by such person. To the extent that the Opposition is to services performed by para-professionals within the office of the Examiner, purely because those persons were not enumerated in the appointing Order, the statute requires the objection be denied. As to junior attorneys within the firm of the Examiner, the statute does not specifically cover such persons. However, the courts have examined this question and among those opinions located by this court is the opinion of the United States Bankruptcy Court for the Southern District of California in the case of *Tighe Mercantile, Inc.*, 62 B.R. 995 (S.D. Ca..1986). This court agrees with the opinion and finds that pursuant to Section 105 of the Bankruptcy Code, where it is necessary for the examiner to perform the duties required, reasonable use of professionals within the same firm or office of the examiner should be compensated. To do otherwise would at times require the examiner, often at a higher rate of compensation, to do work which would be most efficiently delegated to someone more junior in the profession.

As to the specific time entries and the reasonableness of the time spent by the Examiner and those in his office, no specific events have been pointed to as exorbitant. Nonetheless, the court has reviewed the time records in specific detail. The court notes that the Examiner was given a limited period of time within which to furnish a report in the context of a pending and postponed hearing

upon Mr. Drescher's Motion to Dismiss. The Examiner met the deadline and furnished the report.

Upon review of the time records, the court finds no unreasonable charges recorded thereupon. Although at first blush, there appears to be "lumping" as to the amount of time spent by a specific individual on a specific date, a careful reading reveals that in the description of services the total aggregate amount of time is broken down into the specific separate projects worked upon by that individual on that date. When each of these detailed time entries is reviewed, it does not appear to this court that an unreasonable amount of time was spent, or an unreasonable rate charged for the specific work. Nor does the work done appear to have been unnecessary to the furnishing of the report.

Perhaps the most ardently asserted objection to the Amended Application (at least based upon the arguments and questions addressed to the Examiner at the hearing), is the opponents' assertion that the Examiner did not faithfully and accurately complete the work. At the hearing upon the Amended Application, the Examiner testified concerning his activities in the case. He was cross-examined by Mr. Wright acting pro-se as a purported creditor.[5] Thereafter, Mr. Wright testified as to his view of the activities of the Examiner. The court finds the testimony of the Examiner credible but finds that the testimony of Mr. Wright to be largely argumentative and often based upon incomplete or fallacious assumptions of law.

The testimony of the Examiner included that the records for the liquor store part of the

---

[5] The court notes that Mr. Wright has extensive litigation "experience". A search of the records of the Federal Court discloses that Mr. Wright has been a frequent litigant before those courts at times appearing without counsel and on behalf of entities. Most recently, that record discloses that Mr. Wright individually and as Trustee Trust FBO Secured Creditors Perryville Investment Group LLC filed an action in the Circuit Court of Maryland for Cecil County against Donagle Insurance Companies, et al. during the pendency of this bankruptcy case and after the case had been converted to a case under Chapter 7. The complaint therein was signed by Mr. Wright without counsel in the capacities just stated. The case was removed to the United States District Court for the District of Maryland on March 29, 2006, and dismissed by Order entered June 7, 2006 (motion to alter or amend or vacate filed June 19, 2006 and pending).

9

business consisted largely of the cash register.  Although the cash register contained a feature which would permit a running inventory to be recorded, it was in fact not properly being used.  Apparently while the register was relieving book inventory as sales were made, new purchases were not input to the register data base and therefore the inventory reflected by a print-out report was largely inaccurate.  On cross-examination, Mr. Wright testified that no balance sheet had been prepared for the business for year 2004, nor had a profit and loss statement or balance sheet been produced to the Examiner. Only after the Examiner was appointed and issues were joined in this court case, was a physical inventory "updated."

      A significant portion of Mr. Wright's testimony centered on Mr. Wright's assumption that the Examiner was required to personally carry out all duties without use of any subordinates.  Further, Mr. Wright was disappointed that the Examiner did not make a determination of two significant legal issues pre-existing this case.  Prior to the first bankruptcy case, the Debtor acquired the liquor store and bar business from the present landlord, Mr. Patel and/or Giant Liquors, Inc.  In addition, the Debtor commenced occupation of the premises upon which the business was located and which premises are owned by Mr. Patel.  The evidence indicates that the Debtor has not paid rent to Mr. Patel and has not paid Mr. Patel for the purchase of the liquor store assets.  The Debtor's position (by Mr. Wright's testimony) is that under the agreement between the Debtor and Mr. Patel, no rent would become due and no payment would be due until a "formal settlement" was conducted.  This is the dispute which Judge Derby found in the first bankruptcy case was a two-party dispute, not susceptible to a reorganization.

      The second issue arises from the assertion that interests are now held in the Debtor's assets by Mr. Wright and Krista Wright, and/or a trust in favor of persons including Mr. Wright and Krista Wright, under documents apparently created immediately after the dismissal of the first bankruptcy case.  Mr. Wright's testimony included an allegation that the records of the business for the three

months prior to the appointment of the Examiner were not records of the Debtor, but of the trust.[6]

The Order Appointing Examiner entered August 11, 2005, specifically charged the Examiner with certain duties. The examiner was required to preserve the assets of the enterprise pending a final hearing upon the outstanding Motion to Dismiss. Further, the court ordered the Examiner to file a report providing a recommendation as to what prospects, if any, there were for reorganization in the case and whether the case should stay in Chapter 11 or be converted to Chapter 7, or be dismissed. The Examiner was not appointed as a binding arbitrator to resolve the outstanding disputes as to the ownership of assets by and between Mr. Patel and the Debtor, or the interests, if any, held by the trust allegedly created by the Wrights. Obviously, the Examiner could not make any final determination as to these disputes, nor did the court request the Examiner to make any recommendation concerning what were obviously factually contested issues.[7]

In conclusion, the court finds the objections of the opponents to the Amended Application to be without merit. Further, the court finds that the exhibits entered into evidence at the hearing upon the Amended Application, and the testimony of the Examiner at that hearing, fully support the

---

[6] The schedules filed by the debtor and signed by Mr. Wright as President and managing member include a "Note" as follows: "Assets subject to the effect of the July 20, 2005 'Bill of Sale in Lieu of Execution of Judgments by Secured Creditors.'" Attached to the Schedules is the "Bill of Sale..." reciting that the Wrights and others hold liens in the assets and purporting to transfer the assets to the asserted lienors for the purpose of establishing a business trust in favor of the purported lienors. The assets specifically exclude assets described as belonging to Mr. Patel or Giant Discount Liquors, Inc. "(a Maryland Corporation owned by Patel)." The Wrights are listed on Schedule D as Secured Creditors with reference to UCC-1 Financing Statements. As set forth in the oral findings and conclusions of the court upon the record at the hearing held upon the motion to dismiss on September 7, 2005, the glaring conflict of interest between the position of Stephen Wright as alleged beneficiary of a trust holding an interest in property previously owned by the debtor and the position of Stephen Wright as managing member of the debtor-in-possession, was a significant element in the court's determining that a Chapter 11 Trustee was required.

[7] No adversary proceeding or motion has been filed seeking a determination as to the alleged rights to the property involved in this case.

11

entitlement of the Examiner to allowance of compensation in the amount requested.  An Order consistent with this Memorandum will be entered.


cc:     Debtor
        Debtor's Counsel- Harold J. Tulley, Esq.
        Chapter 7 Trustee-- Bud S. Tayman, Esq.
        Examiner-- Sean C. Logan, Esq.
        U.S. Trustee
        All Other Parties-In-Interest

**End of Order**